A08A1347. DODD v. THE STATE.
(668 SE2d 311)

MILLER, Judge.
On March 10, 2006, a Fannin County jury found Reginald Dodd guilty of child molestation and criminal attempt to commit child

molestation, in violation of OCGA § 16-6-4. Dodd appeals from the denial of his motion for a new trial, arguing that (1) the trial court abused its discretion by refusing to allow him to admit evidence of alleged similar crimes in support of his third-party perpetrator defense; (2) the prosecution withheld exculpatory evidence; (3) the trial court erred in failing to suppress the results of his polygraph; and (4) the trial court improperly denied him access to records from the Fannin County Department of Family and Children Services (the "Department"). Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict, the record shows that Dodd is the victim's paternal great uncle and visited the victim's parents and stayed overnight frequently in their Fannin County home. Another relative of the victim's father, his cousin, Anthony Dodd ("Anthony"), lived in the victim's home for approximately a year or year and a half in 2003 and 2004 and was residing there in January 2004. The victim was ten years old at the time.

On January 2, 2004, Dodd spent the night at the victim's house. The victim's parents and Anthony were also home, and the parents, Dodd, and Anthony all fell asleep in the living room while watching television. At approximately 5:00 the next morning, Dodd entered the victim's room and asked if he could touch her, but she said no. Dodd told the victim not to tell anyone what had happened and was gone by the time anyone else in the house woke up that morning.

Later in the morning, the victim told her father and Anthony what Dodd had done. The victim then spoke with her mother and revealed another incident involving Dodd. The victim stated that on an earlier occasion, Dodd came into her bedroom at approximately 4:00 a.m., laid down beside her, and told her to put her hands in his pants and squeeze. Upset over the victim's reports, the victim's father called Dodd and told Dodd that he needed to talk to him about the victim, prompting Dodd to reply that nothing happened and that he did not touch the victim.

Dodd submitted voluntarily to two police interviews and gave two statements in which he denied the victim's allegations and stated that he had never touched the victim inappropriately. Dodd subsequently agreed to take a polygraph test. After the polygraph examiner informed Dodd that the results of his test indicated deception, Dodd gave a third statement claiming, for the first time, that once while he was watching a movie with the victim, she tried to touch him inappropriately, but he told her not to.

In discussions with her parents, in forensic interviews, and at trial, the victim steadfastly and consistently identified Dodd as the perpetrator. She denied that Anthony or anyone else other than

Dodd had attempted to touch her. The victim stated that she knew Dodd was the perpetrator because she recognized his voice and body structure.

The victim's father and Anthony testified at trial that they had been sexually abused by Dodd as children. The victim's mother testified that when the victim was approximately four years old, the victim told her that Dodd had asked her to touch her "moomoo," i.e., her vagina. The victim's father testified that when the victim was five, she told her parents that Dodd had touched her inappropriately. The parents explained, however, that at the time, they believed the victim may have misunderstood what Dodd had said or done, and they did not contact law enforcement.

1. Dodd argues that the trial court erred in granting the state's motion in limine to exclude evidence of alleged similar crimes Anthony committed. We disagree.

Notwithstanding the victim's repeated and consistent statements that Dodd was the perpetrator and that she was able to recognize him by his voice and body structure, Dodd attempted to convince the jury that the victim misidentified Dodd and that it was Anthony who perpetrated the crimes at issue. For example, Dodd sought to establish on cross-examination of the victim that it was dark when the crimes occurred and that the perpetrator spoke in a quiet voice, making identification more difficult.

During Anthony's cross-examination, Dodd's counsel also attempted to suggest that Anthony had "put [the] idea in [the victim's] head" that Dodd was touching her. Dodd asked the jury to draw this inference from Anthony's testimony that a few nights before January 2, 2004, he warned the victim about Dodd. Anthony testified that his conversation with the victim occurred after he overheard the victim talking to Dodd in her bedroom one evening and telling Dodd not to touch her. Anthony stated that he walked into the victim's room and that Dodd appeared startled and left. Anthony then told the victim that if Dodd had done anything to her, she could tell him and her father.

Finally, Dodd argued that Anthony had attempted to cast false suspicion on him by misidentifying two "similar transaction" witnesses against Dodd. The victim's father testified that he gave investigators names of other people he believed may have been sexually abused by Dodd, including two people he identified based on information provided by Anthony. The defense called those two individuals as witnesses, and both denied that Dodd had engaged in wrongdoing.

Dodd also wished to offer evidence of alleged similar offenses by Anthony to support his theory that Anthony was the real perpetrator but was precluded from doing so by the trial court's ruling. Dodd

wished to introduce evidence that in 2006, Anthony was charged with the 2005 statutory rape and molestation of a 13-year-old girl and that Anthony had been accused of sexually abusing other juveniles. "Absent clear abuse, the trial court's exercise of discretion in admitting or refusing to admit evidence is entitled to deference." (Citation and punctuation omitted.) *Morrison v. Morrison*, 282 Ga. 866, 867 (2) (655 SE2d 571) (2008); *Hudson v. State*, 273 Ga. 124, 126 (2) (538 SE2d 751) (2000). We find no abuse of discretion in the trial court's exclusion of evidence of Anthony's alleged similar crimes.

In order for a criminal defendant to introduce evidence implicating a third party in the commission of the crime for which the defendant is being tried,

> the proffered evidence must raise a reasonable inference of the defendant's innocence and it must directly connect the other person with the corpus delicti or show that the other person has recently committed a crime of the same or similar nature. [The Supreme Court of Georgia has] ruled that a reasonable inference of the defendant's innocence was raised by evidence that rendered the desired inference more probable than the inference would be without the evidence.

(Citations omitted.) *Oree v. State*, 280 Ga. 588, 593 (5) (630 SE2d 390) (2006); see also *Klinect v. State*, 269 Ga. 570, 573 (3) (501 SE2d 810) (1998). "[E]vidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another is not admissible." (Punctuation and footnote omitted.) *Carr v. State*, 279 Ga. 271, 272 (2) (612 SE2d 292) (2005).

Under the circumstances of this case, the trial court could have reasonably concluded that evidence of Anthony's alleged similar crimes, whether considered alone or in connection with other evidence the defense relied upon to attempt to implicate Anthony, fails to raise more than a conjectural inference that Anthony committed the crimes. The ten-year-old victim, who had known and spent time around Dodd for years, consistently identified Dodd and only Dodd as the perpetrator. Dodd's telephone conversation with the victim's father following the crimes, Dodd's polygraph results, and his changing statements to law enforcement tended to corroborate the victim's testimony. In addition, the evidence failed to establish that Anthony was present when both crimes occurred.

Additionally, our prior cases have affirmed the exclusion of evidence similar to that Dodd wished to introduce. *Bell v. State*, 235 Ga. App. 825, 825-826 (510 SE2d 589) (1998) (trial court properly excluded evidence that victim had lived for number of years with her

mother's stepfather, who once attempted to inappropriately touch victim's mother; victim consistently identified defendant as perpetrator, and no other evidence connected third party to crime); *Burris v. State*, 204 Ga. App. 806, 808-809 (2) (420 SE2d 582) (1992) (trial court did not abuse its discretion in excluding evidence that child molestation victim resided for time in same house with her maternal great uncle who allegedly had molested victim's mother and uncle when they were children, when victim had never accused her great uncle of molesting her and defense offered no other evidence that victim's great uncle committed crimes); see also *Neal v. State*, 210 Ga. App. 522, 523-524 (2) (436 SE2d 574) (1993); *Sales v. State*, 199 Ga. App. 791, 792-793 (406 SE2d 131) (1991).

We reject Dodd's argument that *Scott v. State*, 281 Ga. 373 (637 SE2d 652) (2006), requires us to reach a different result here than in *Bell* and *Burris*. The defendant in *Scott* was convicted of felony murder after his son died as a result of severe abuse. Id. at 373-374. The other adult present in the apartment the day the abuse occurred previously was accused of abusing her 23-month-old child. Id. at 376 (3). The trial court refused to allow the defense to question the third party about these prior allegations. Id. The Supreme Court of Georgia reversed, concluding that the excluded evidence raised a reasonable inference of the defendant's innocence. Id. at 377 (3). *Scott* differs from *Bell*, *Burris*, and this case in significant respects. Specifically, the victim in *Scott*, an infant, was deceased and could not identify the perpetrator, and the evidence against the defendant in *Scott* was purely circumstantial. Additionally, the third party in *Scott* was indisputably present when the crime occurred. The evidence in this case, however, does not show Anthony's presence in the house at the time of both crimes.

Finding that this case is controlled by our prior holdings in *Bell* and *Burris*, we reject Dodd's first enumeration of error.

2. Dodd argues that the prosecution withheld exculpatory information in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) and its progeny. Specifically, Dodd claims that the prosecution failed to disclose that the victim's father and Anthony were the reporters who identified to law enforcement two potential witnesses who might have been sexually abused by Dodd. As discussed above, however, the victim's father testified at trial that he had identified these individuals to law enforcement based on information from Anthony. "*Brady* itself does not require the pre-trial disclosure of exculpatory evidence and is not violated when the evidence is presented to the jury at trial." (Citation and punctuation omitted.) *Dennis v. State*, 263 Ga. 257, 259 (5) (430 SE2d 742) (1993); *Whatley v. State*, 197 Ga. App. 489, 490 (3) (398 SE2d

807) (1990). Because the allegedly withheld information was disclosed to the jury, no *Brady* violation occurred.

3. Dodd contends that the trial court abused its discretion in denying his motion to suppress the results of his polygraph examination, arguing that he could not read and understand the agreement he signed stipulating that the results of the examination would be admissible. Dodd relies on evidence, introduced for the first time at the hearing on his motion for new trial, that the readability of the stipulation exceeded his ninth grade education and twelfth grade reading level. At trial, defense counsel did not challenge the readability of the stipulation, and Dodd's objection to the stipulation on this ground was therefore waived. *Jackson v. State*, 281 Ga. App. 368, 369 (636 SE2d 34) (2006).

4. Finally, Dodd maintains that the trial court abused its discretion by failing to provide him with access to records from the Department regarding the victim and her family.

Pursuant to OCGA § 49-5-40, records concerning reports of child abuse are confidential, and access to such records is prohibited except as provided in OCGA §§ 49-5-41 and 49-5-41.1. OCGA § 49-5-41 (a) (2) grants access to such records to

> [a] court, by subpoena, upon its finding that access to such records may be necessary for determination of an issue before such court; provided, however, that the court shall examine such record in camera, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then before it and the record is otherwise admissible under the rules of evidence.

In a criminal case, a trial court's in camera inspection of confidential files to identify potentially exculpatory material "comports with the requirements of due process." *Davidson v. State*, 183 Ga. App. 557, 559 (4) (b) (359 SE2d 372) (1987) (citing *Pennsylvania v. Ritchie*, 480 U. S. 39 (107 SC 989, 94 LE2d 40) (1987)). A defendant who challenges a trial court's in camera inspection on appeal must show what information was suppressed and how it is materially exculpatory. *Pollard v. State*, 260 Ga. App. 540, 544 (4) (580 SE2d 337) (2003); *Dunagan v. State*, 255 Ga. App. 309, 312 (4) (565 SE2d 526) (2002). Dodd cannot sustain this burden.

After completing his in camera inspection on the third day of trial, the trial judge did not produce any documents to Dodd but instead provided a verbal summary of certain materials in the Department's files which he identified as potentially valuable or exculpatory. These materials included reports on medical examina-

tions of the victim and her sister conducted shortly after the crimes. Defense counsel requested but was denied the opportunity to examine several documents the court described, including the medical examination reports.

The trial court's refusal to turn over the exculpatory documents themselves was erroneous. OCGA § 49-5-41 (a) (2) (public disclosure permitted when information necessary for resolution of issue before the court); see also *Dunagan*, supra, 255 Ga. App. at 310 (3) (several DFCS documents introduced at trial); *Plante v. State*, 203 Ga. App. 33 (416 SE2d 316) (1992) (four pages from DFCS file provided to defense). We cannot conclude, however, that this error operated to deprive Dodd of his due process rights. The trial court's description of the materials contained in the Department's files does not indicate that the files contained exculpatory information of the type Dodd now claims was withheld. Dodd, moreover, never requested that the records reviewed by the trial court be made part of the record on appeal. *Johnson v. State*, 271 Ga. 375, 379-380 (7) (519 SE2d 221) (1999) (failure to ensure materials reviewed in camera are sealed and filed constituted waiver). We thus have no basis for concluding that the trial court withheld any material, exculpatory information. See *Honeycutt v. State*, 245 Ga. App. 819, 820 (2) (538 SE2d 870) (2000) (because material examined by court was not in record, defendant did not show that material, exculpatory information was withheld).

For the reasons set forth above, we affirm the trial court's denial of Dodd's motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 3, 2008.

Juanita M. Twiggs, for appellant.
Joe W. Hendricks, Jr., District Attorney, Clifford A. Sticher, Assistant District Attorney, for appellee.