### A09A0346. HUGHES v. THE STATE.

(677 SE2d 674)

BLACKBURN, Presiding Judge.

Following a jury trial, Robert Hughes appeals his conviction of child molestation,[1] contending that the verdict was against the weight of the evidence and that the court erred in three evidentiary rulings. We hold that the evidence supported the verdict and that the trial court did not abuse its discretion in the evidentiary rulings. Accordingly, we affirm.

Construed in favor of the verdict, *Short v. State*,[2] the evidence shows that while his wife was asleep, Hughes would often enter his stepdaughter's bedroom (from the time she was seven) and lay down behind her while she slept on her side. He would then move the stepdaughter's panties, place his private part between her legs, and rub it back and forth against her private part. These incidents did not cease until a sibling moved into the stepdaughter's bedroom when the stepdaughter was ten.

Some months later, when the now 11-year-old stepdaughter was with a church group on a week-long choral tour, she approached one of the group's female counselors and told her of the incidents. They consulted the church pastor, who arranged for the stepdaughter to inform her mother after the tour group returned from its trip. The mother immediately confronted Hughes with the accusations, who responded, "If it happened, it only happened one time." She kicked Hughes out of the house and contacted police. She later recorded conversations with Hughes over the phone, in which he acknowledged the statement that it may have happened "one time" and in which he also conceded that he may have done something "by accident."

A detective videotaped an interview with the stepdaughter, in which she confirmed the details of the molestation. After interviewing Hughes, a second officer interviewed the child a few months later in another videotaped setting to ask about Hughes's denials and about Hughes's accusation that the stepdaughter had suggestively touched his private part one night while the two had sat on the couch watching television. She denied the accusation and stood by her

---

[1] OCGA § 16-6-4 (a).

[2] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

582

version of the events.

Indicted on one count of child molestation for touching his private part to her private part, Hughes received a jury trial, during which the stepdaughter testified to the incidents and during which the videotapes of his stepdaughter's interviews were played. The jury found him guilty, and he moved for a new trial, which was denied. He now appeals.

1. Hughes argues that the verdict was decidedly wrong and against the weight of the evidence. Of course, such an argument may only be made to a trial court in a motion for new trial, not to an appellate court on appeal. *Clark v. State.*[3] "We do not have the discretion to grant a new trial on these grounds. . . ." *Drake v. State.*[4] See *Dae v. Patterson.*[5] Even assuming Hughes was properly challenging the sufficiency of the evidence under *Jackson v. Virginia,*[6] "[i]t is well established that in child molestation cases, the victim's testimony alone is sufficient to support a conviction." *Green v. State.*[7] We discern no error.

2. Hughes contends that the court erred in admitting the videotapes of the two police interviews of the stepdaughter. Specifically, he argues that the circumstances of the interviews did not provide sufficient indicia of reliability to be admissible under OCGA § 24-3-16. We hold that the trial court did not abuse its discretion in finding that sufficient indicia of reliability were present.

OCGA § 24-3-16 provides that

> [a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

The stepdaughter, who was 11 at the time of the first interview and 12 at the time of the second interview, testified at trial and was subjected to cross-examination. Thus, if the court had reason to find that the circumstances of the videotaped statements provided suffi-

---

[3] *Clark v. State*, 249 Ga. App. 97 (547 SE2d 734) (2001).
[4] *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978).
[5] *Dae v. Patterson*, 295 Ga. App. 818, 819 (1) (673 SE2d 306) (2009).
[6] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[7] *Green v. State*, 293 Ga. App. 752, 753-754 (1) (667 SE2d 921) (2008).

YALE LAW LIBRARY

cient indicia of reliability, then the court properly admitted the videotapes.

The standard for our review of this ruling of the trial court is clear. "The trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion." (Punctuation omitted.) *Phillips v. State*.[8] Some of the factors a court may consider when determining whether an out-of-court statement has sufficient indicia of reliability include the following:

> (1) the atmosphere and circumstances under which the statement *was made* (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child.

(Emphasis in original.) *Gregg v. State*.[9] "However, these factors are not to be mechanically applied but considered in a manner best calculated to facilitate the determination of the required degree of trustworthiness." (Punctuation omitted.) *Phillips*, supra, 284 Ga. App. at 227 (1) (b).

Here, the stepdaughter was 11 years old at the time of the first interview (and 12 at the time of the second interview). She was interviewed by police detectives in a police interview room and outside of the presence of her mother so as to avoid any undue influence. The stepdaughter's recounting of the events remained consistent. The detectives also testified that to their knowledge, no one before the interviews coached the stepdaughter as to what she needed to say nor did they make her any promises to induce her to talk. There was no evidence that the stepdaughter was impaired by drugs or alcohol.

Our review of the videotapes confirms that, although reticent,

---

[8] *Phillips v. State*, 284 Ga. App. 224, 227 (1) (b) (644 SE2d 153) (2007).
[9] *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991).

the stepdaughter appeared generally to be in a good physical and emotional condition, and that her responses reflected a degree of spontaneity and credibility. Even though the interviewers occasionally asked leading questions, cf. *Bell v. State*[10] (no abuse of discretion to permit some leading questions of a young, reticent victim), the stepdaughter more often gave longer narratives of the events, corrected the interviewer as to details, and readily disagreed with conclusory remarks of the interviewer where such did not comport with her memory.

As in *Knight v. State*,[11] we do not find the time interval between the events and the interviews to preclude the admission of the tapes. And, unlike the two-and-one-half-year-old witness in *Rolader v. State*,[12] a case cited by Hughes, the stepdaughter here was eleven or twelve years old at the time she recounted the incidents to the police interviewers. Similarly, unlike the interview of the three-year-old in *Ferreri v. State*,[13] another case cited by Hughes, not only were no rewards given to the stepdaughter in response to incriminating statements, but the stepdaughter's recounting of the incidents were consistent. Finally, we note that the victim here testified at trial, "thus allowing [Hughes] every opportunity to cross-examine her before the jury regarding the circumstances surrounding the videotaped interview[s], and giving the jury the opportunity to judge her demeanor and credibility during that examination." *Phillips*, supra, 284 Ga. App. at 228 (1) (b). This circumstance "provided an additional safeguard to [Hughes's] right of fair trial and provided him full opportunity for confrontation." (Punctuation omitted.) Id.

For these reasons, the trial court did not abuse its discretion when it admitted the two videotaped child interviews. *Phillips*, supra, 284 Ga. App. at 228 (1) (b).

3. Hughes complains that the trial court erred in preventing him from asking the mother about allegations the mother had made that she herself had been molested as a child, and further erred in preventing him from asking about "general family life" to give the jury the total picture of the household. In this regard, we note that "[t]he scope of cross-examination is within the sound discretion of the trial court, and irrelevant matter should be excluded." (Footnote omitted.) *Mann v. State*.[14]

We discern no abuse of discretion here. Evidence showed that the stepdaughter did not learn that her mother had been sexually

YALE LAW LIBRARY

---

[10] *Bell v. State*, 294 Ga. App. 779, 781 (3) (670 SE2d 476) (2008).
[11] *Knight v. State*, 210 Ga. App. 228, 229 (1) (435 SE2d 682) (1993).
[12] *Rolader v. State*, 202 Ga. App. 134, 139-141 (1) (413 SE2d 752) (1991).
[13] *Ferreri v. State*, 267 Ga. App. 811, 813 (600 SE2d 793) (2004).
[14] *Mann v. State*, 244 Ga. App. 756, 760 (6) (536 SE2d 608) (2000).

abused as a child until *after* the stepdaughter had made her outcry. This therefore eliminated any effect this allegation could have had on causing the stepdaughter to make a similar allegation. As in *Mann*, "we agree that the prior sexual abuse of [her] mother is irrelevant and was properly excluded." Id.

Regarding questions concerning "general family life" (assuming such were relevant), we note that Hughes was in fact allowed to explore this subject matter. For example, Hughes inquired into the reasons for the mother's prior divorces, into emotional abuse of the stepdaughter by the mother's second husband, and into the people who lived in the house and their sleeping arrangements. We discern no abuse of discretion.

4. Finally, Hughes argues that the court erred in not permitting him to inquire into the circumstances of another man's possibly molesting the stepdaughter and into the stepdaughter's possibly engaging in masturbation at a very young age. Again, we discern no abuse of the trial court's discretion in preventing inquiry into these irrelevant matters.

With regard to the possible molestation by another man, Hughes maintains that this could have shown that the actual perpetrator was this other man and not him. However,

> [i]n order for a criminal defendant to introduce evidence implicating a third party in the commission of the crime for which the defendant is being tried, the proffered evidence must raise a reasonable inference of the defendant's innocence and it must directly connect the other person with the corpus delicti or show that the other person has recently committed a crime of the same or similar nature. The Supreme Court of Georgia has ruled that a reasonable inference of the defendant's innocence was raised by evidence that rendered the desired inference more probable than the inference would be without the evidence. Evidence that merely casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another is not admissible.

(Citations and punctuation omitted.) *Dodd v. State*.[15]

Here, the trial court could have reasonably concluded that the evidence of another man's committing the molestation was conjectural for at least two reasons. First, the "evidence" was very thin: the mother simply told police they should investigate this other man also.

---

[15] *Dodd v. State*, 293 Ga. App. 816, 819 (1) (668 SE2d 311) (2008).

There was never any evidence that in fact this other man molested the stepdaughter. Second, the stepdaughter consistently identified Hughes and only Hughes as the perpetrator. See *Dodd*, supra, 293 Ga. App. at 819 (1); *Bell v. State*[16] (conjectural evidence of molestation by another man excluded where "the victim herself consistently identified [the defendant] as the *only* person who molested her") (emphasis in original); *Neal v. State*[17] (same). Hughes's own admissions to his wife in the recorded conversations corroborated this evidence. We discern no abuse of discretion in the trial court's excluding the conjectural evidence of another man's possibly molesting the stepdaughter.

With regard to the stepdaughter's possibly engaging in masturbation at an early age, we first hold that the trial court did not rule on this matter because it was brought up in a motion in limine, at which time the court announced that it felt it could better rule based on the context of the question once it was actually posed at trial. Hughes's counsel responded, "I'll wait and see how this witness goes and if we start going there, I'll let Your Honor — I'll bring it up again to you." Hughes's counsel did not raise the matter again. No error occurs where defense counsel abandons an argument at trial. *Slade v. State*.[18] Moreover, even if Hughes had not abandoned the matter, we hold that "evidence of a child victim's . . . sexual history is inadmissible absent a showing of relevance." *Neal*, supra, 210 Ga. App. at 524 (3). Here, there was no allegation that the stepdaughter had any unusually early or sudden sexual knowledge; thus, her sexual history would appear irrelevant under the circumstances of this case.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED MARCH 27, 2009 —
RECONSIDERATION DENIED APRIL 22, 2009 —

*Brenda J. Bernstein*, for appellant.
*Daniel J. Porter, District Attorney, William C. Akins, Assistant District Attorney*, for appellee.

---

[16] *Bell v. State*, 235 Ga. App. 825, 826 (510 SE2d 589) (1998).
[17] *Neal v. State*, 210 Ga. App. 522, 524 (2) (436 SE2d 574) (1993).
[18] *Slade v. State*, 287 Ga. App. 34, 36 (2) (651 SE2d 352) (2007).